**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.S. IMMIGRATION FUND-NY LLC, *et al.*,<br><br>　　　　Plaintiffs<br><br>　v.<br><br>ALEJANDRO MAYORKAS, in his official<br>capacity as Secretary of Homeland Security,<br>*et al.*,<br><br>　　　　Defendants. | Civil Action No. 21-0358 (CKK) |

**MEMORANDUM OPINION**
(March 10, 2022)

This Administrative Procedure Act ("APA") case centers on Defendant U.S. Citizenship and Immigration Services' ("USCIS") 2020 update to USCIS' 2013 "Policy Manual" that promulgated an additional adjudication requirement for EB-5 visa applications ("2020 Update"). Plaintiffs, corporate entities that operate as "economic regional centers" ("Regional Center") or "New Commercial Enterprises" ("NCE") into which EB-5 applicants may invest, argue that the Court should set aside this 2020 Update as arbitrary or capricious because, in Plaintiffs' view, it is a legislative rule that did not go through notice-and-comment rulemaking. Defendants maintain that the 2020 Update was a mere interpretive rule not subject to notice-and-comment rulemaking. Additionally, Defendants argue that the Court lacks subject matter jurisdiction on ripeness and mootness grounds. Because USCIS continues to apply the 2020 Update to at least one stage of the EB-5 process, and upon consideration of the pleadings,[1] the relevant legal

---

[1] This Memorandum Opinion focuses on the following documents:
- Plaintiffs' Complaint, ECF No. 1 ("Compl.");
- Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, ECF No. 17-1 ("MTD");

authorities, and the entire record, the Court shall **DENY** Defendants' [22] Motion to Dismiss Based on Changed Circumstances.  As Plaintiffs' claims are not yet ripe, however, the Court shall **GRANT** Defendants' [17] Motion to Dismiss.

## I.    BACKGROUND

The EB-5 visa program was created as part of the Immigration Act of 1990 "to incentivize employment creation in the United States."  Dep't of Homeland Sec., *EB-5 Immigrant Investor Regional Center Program*, 82 Fed. Reg. 3211, 3212 (July 24, 2019).  Under the Immigration Act of 1990, to receive an EB-5 visa, a noncitizen (1) must make or have made a minimum investment in a New Commercial Enterprise ("NCE") that satisfies certain statutory and regulatory conditions and (2) establish that the NCE directly created full-time employment for no fewer than ten employees lawfully working in the United States.  *Id.*  The EB-5 program is unique among visa programs in that it provides a direct path to lawful permanent residency ("LPR") for foreign investors who invest $1.8 million (or $900,000 in a high unemployment or rural area) in a NCE.  Order at 2, *Civitas Mass. Regional Ctr. v. Mayorkas*, 21-cv-10344-LTS (D. Mass. Jan. 19, 2022) (slip op.) ("*Civitas*").

In its first two years of the program's existence, an EB-5 applicant was required to show investment into a particular NCE and that the investor would be engaged in the management of the NCE.  *See* USCIS, *Policy Manual*, Part G, Ch. 4 *available at* https://www.uscis.gov/policy-

---

- Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Based on Changed Circumstances, ECF No. 22-1 ("Supp. MTD");
- Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss, ECF No. 23 ("Opp."); and
- Defendants' Combined Reply to Plaintiffs' Single Brief in Opposition to Defendants' Two Separate Motions to Dismiss, ECF No. 24 ("Repl.").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

manual/volume-6-part-g-chapter-4 (last accessed Mar. 7, 2022 9:44 AM) ("Policy Manual"); 8

U.S.C. §§ 1153(b)(5)(A)-(D).  In 1992, however, Congress established a Regional Center Pilot

Program ("Program"), permitting EB-5 applicants to invest funds in registered "regional centers"

without having to show management of the NCE or direct creation of at least ten jobs.  Rather,

the regional centers, created "for the promotion of economic growth, including increased export

sales, improved regional productivity, job creation, or increased domestic capital investment" in

particular geographic areas, could deploy investor capital as they saw fit, and investors could

qualify for an EB-5 visa so long as the regional center created ten jobs as a result of the

investor's deployed capital.   *See* Departments of State, Justice, and Commerce, the Judiciary and

Related Agencies Appropriations Act of 1992, Pub. L. No. 102-395, § 610(a) (Oct. 6, 1992)

(codified at 8 U.S.C. §1153); *Bromfman v. USCIS*, 2021 WL 5014436 at *1 (D.D.C. Oct. 28,

2021) (BAH) (citing 8 C.F.R. § 204.6(m)).

    To qualify for an EB-5 visa, a "regional center" investor must first file a Form I-526,

Immigrant Petition by Alien Entrepreneur, demonstrating that the requisite level of capital has

been deployed through the Regional Center and that the investment will create at least ten direct

or indirect full-time jobs.  Policy Manual, Part G, Ch. 4.  Upon approval of the I-526, the

investor becomes eligible to receive an EB-5 visa.  *See id*.  After favorable adjudication, and if

the investor wants to pursue LPR status, the investor must file a Form I-495, Application to

Register Permanent Residence or Adjust Status, if within the United States, or Form DS-260,

Application for Immigrant Visa and Alien Registration, if outside of the United States.  USCIS,

EB-5 Investors *available at* https://www.uscis.gov/working-in-the-united-states/permanent-

workers/employment-based-immigration-fifth-preference-eb-5/eb-5-investors.  If approved, the

investor obtains conditional LPR status for two years.  Policy Manual, Part G, Ch. 4.  Finally, 90

days before the expiration of the conditional status, the investor must file a Form I-829, Petition

by Investor to Remove Conditions on Permanent Resident Status.  At all stages, the investor

must show that they have kept their investment "at-risk," i.e., deployed in some NCE.  Policy

Manual, Part G, Ch. 2.

A substantial amount of time may pass, however, between the submission of any Form

and its approval.  The complaint alleges that more than a decade may elapse between the

submission of an I-526 petition and its approval.  Compl. at ¶ 125.  Because there may be

another delay between the submission of an I-829 and the provision of LPR status, Plaintiffs

assert that a EB-5 investor could "have to place his or her funds at risk for as long as 20 years."

*Id.* at ¶ 137 (emphasis omitted).  In part to address these concerns, USCIS adopted a policy of

"redeployment," permitting an applicant's capital invested in one New Commercial Enterprise to

be "redeployed" to another New Commercial Enterprise to maintain eligibility.  *Civitas* at 4.  As

Plaintiffs note, "redeployment" is found neither in the statute—now defunct—nor applicable

regulations.  Compl. at ¶ 140.  Plaintiffs do not challenge the redeployment policy, however, but

the 2020 Update now requiring that "[re]deployment must occur within the regional center's

geographic area."  Compl. at ¶ 87.

Since its inception, the Program had been repeatedly reauthorized by statute.  *Bromfman*,

2021 WL 5014436 at *2.  The Program expired on June 30, 2021, *id.*, and has not, to date, been

reauthorized.  Defendants argue that the program's lapse moots the case.  In the alternative,

Defendants argue that Plaintiffs (1) have yet to suffer a constitutionally cognizable injury and (2)

do not state a claim under the APA.

4

## II.    LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Jurisdiction

Federal courts are "courts of limited jurisdiction" and can adjudicate only those cases

entrusted to them by the Constitution or an Act of Congress.  *Kokkonen v. Guardian Life Ins. Co.*

*of Am.*, 511 U.S. 375, 377 (1994).  As such, a court must dismiss a case pursuant to

Federal Rule 12(b)(1) when it lacks subject matter jurisdiction.  *Bagherian v. Pompeo*, 442 F.

Supp. 3d 87, 91 (D.D.C. 2020).  The Court begins with the presumption that it does not have

subject matter jurisdiction over a case.  *Kokkonen*, 511 U.S. at 377.

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by

a preponderance of the evidence."  *Bagherian*, 442 F. Supp. 3d at 91–92 (D.D.C. 2020); *see*

*also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In determining whether there is

jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced

in the record, or the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts.'"  *Coal. For Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir.

2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir.

1992).  Courts must accept as true all factual allegations in the complaint and construe the

complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the

facts alleged.  *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005); *Koutny*

*v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007).

However, "the factual allegations in the complaint "will bear closer scrutiny in resolving

a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge*

*of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001).  A court need

not accept as true "'a legal conclusion couched as a factual allegation'" or an inference

"'unsupported by the facts set out in the complaint.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B.  Motion to Dismiss for Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  Rather, a complaint must contain sufficient *factual* allegations that, if true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *See In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

## III.     DISCUSSION

### A.  Mootness

Article III of the U.S. Constitution limits judicial power to actual, ongoing cases or

controversies.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351 (2006).  When there is no longer a live controversy between the parties to which the court can grant relief, the matter becomes moot and, thereby, nonjusticiable.  *See McBryde v. Comm. to Review*, 264 F.3d 52, 55 (D.C. Cir. 2001).  The mootness doctrine dictates that a controversy must remain live throughout the entire course of litigation for it to remain justiciable. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).

Defendants argue that the case is moot because "there is no longer statutory authority to issue Regional Center EB-5 visas[ and] the Court cannot redress Plaintiff's [sic] alleged injury." Supp. MTD at 5.  Defendants mischaracterize the alleged injury, however, and the gravamen of the complaint.  The issue here is not whether USCIS can issue new EB-5 visas, i.e., adjudicate Form I-526 petitions, but rather whether prior compliance with the 2020 Update affects the ongoing adjudication of Form I-829 petitions.  *See Civitas* at 6.  USCIS continues to adjudicate the latter, USCIS, EB-5 Investor Program, https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program, and Plaintiffs allege that noncompliance with the 2020 Update may cause the denial of a swath of Form I-829 petitions, pecuniary losses, and Plaintiffs' own termination from the Program, Compl. at ¶ 160.  Because there remains a live controversy related to the 2020 Update, the Court concludes that this case is not moot.

## B.  Ripeness

To satisfy the Article III case or controversy requirement, a case must be "ripe" and cannot rely on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States,* 523 U.S. 296, 300 (1998)*.* The court lacks subject matter jurisdiction if a plaintiff's claims are not yet ripe for review.  *Am. Petrol. Inst. v. EPA*, 683 F.3d

382, 286 (D.C. Cir. 2012).  "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the parties.'"  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967)).  Whether an action is ripe turns on "the fitness of the issues for judicial decision and the hardship to the parties of withholding judicial review."  *Abbott Labs*, 387 U.S. at 349 (new labeling rule posed substantial hardship to pharmaceutical company where company had previously printed up a store of labels complying with prior rule and new rule required new labels or risk of enforcement proceeding). This inquiry "seeks to distinguish between a tentative agency position from the situation where 'the agency views its deliberative process as sufficiently final to demand compliance with the announced position.'"  *Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1531 (D.C. Cir. 1990) (quoting *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986)).

      1.  Fitness

      Even if the key issue in a case is "'a purely legal one,' it is not 'fit' for judicial review if 'further factual development would 'significantly advance [the Court's[ ability to deal with the legal issues presented.'"  *Friends of Animals v. U.S. Bureau of Land Mgmt.*, 514 F. Supp. 3d 290, 301 (D.D.C. 2021) (PLF) (brackets original) (quoting *Nat'l Park Hospitality Ass'n*, 538 U.S. at 812.  This is such a case.

      To determine the ultimate merits of the case, the Court would have to assess whether the "agency action [] sets forth legally binding requirements for a private party to obtain a permit or license."  *Id.* at 251.  The Court would consider three factors to answer this question:  (1) "the

actual legal effect (or lack thereof) of the agency action in question," (2) "the agency's characterization of the guidance," and (3) "whether the agency has applied the guidance as if it were binding on regulated parties."  *Id.*

As to the first factor, the text itself is fairly ambiguous.  Plaintiff points to the mandatory nature of the Policy Manual in which the 2020 Update appears.  It reads:

> The USCIS Policy Manual is the agency's centralized online repository of USCIS' immigration policies.  . . . The Policy Manual contains the official policies of USCIS and assists immigration officers in rendering decisions.  The Policy Manual is to be followed by all USCIS officers in the performance of their duties but it does not remove their discretion in making adjudicatory decisions.

USCIS, Policy Manual *available at* https://www.uscis.gov/policy-manual.  Plaintiffs focus on the fact that the Policy Manual "is to be followed by all USCIS in the performance of their duties." Defendants, on the other hand, seem to argue that the 2020 Update is nonbinding because it does not "remove the[] discretion" of the immigration officers who adjudicate I-829 petitions.  It cannot be said that the Policy Manual, and the key provision here, *only* "presents [USCIS'] position on what the law is" because it sets a condition for the approval of an I-829 petition.  *See Valero Energy Corp. v. EPA*, 927 F.3d 532, 563 (D.C. Cir. 2019) (EPA document that "expressly disclaims any legal effect" is not a legislative rule).  At the same time, if the Policy Manual in its entirety is discretionary, it must not create rules that apply in all cases.  Without a lengthier record explaining the context and meaning of this term in the Policy Manual and its relationship to the 2020 Update itself, the Court at present stage cannot definitively answer this first factor.

So too with the second factor, "the agency's characterization of the guidance."  Although the Policy Manual has a general statement characterizing the extent to which it is binding, the record does not identify any instance where USCIS characterized the 2020 Update itself. Similarly, as Defendants emphasize, USCIS has yet to apply the 2020 Update to any party in an

adjudication or other agency action.  Because further factual development is necessary to answer this legal question, this case is not yet fit for judicial resolution.

    2.   Hardship

    As for hardship, where a proposed agency policy is not yet clear and where "the agency [has not had] a chance to apply its regulations in a concrete factual situation," an APA case is likely not yet ripe.  *Truckers United for Safety v. Fed. Highway Admin.*, 139 F.3d 934, 938 (D.C. Cir. 1998).  This is so because "the substance of the regulatory guidance," even if ostensibly final, may never be applied at all.  *See id.*  Here, Plaintiffs have not identified a single case of the 2020 Update ever being applied to any investor applicant now more than a year-and-a-half after its adoption.  Moreover, if USCIS officers have discretion in applying certain Policy Manual requirements, it is entirely possible that a USCIS officer will never apply the 2020 Update on geographic redeployment.

    Plaintiffs' fear that they will be "possibl[y] terminat[ed] from the [P]rogram as a result of non-compliance with" the 2020 Update also rings hollow.  Compl. at ¶ 56.  As an initial matter, the Program lacks statutory authorization and there is, for standing purposes, insufficient indication that the Program will be reauthorized.  *See Bromfman*, 2021 WL 5014436 at *3. Even if the Program were reauthorized, it is not at all clear to the Court that the regulatory regime permits USCIS to terminate a regional center purely on the basis of redeployment to another geographic region.  The applicable regulation states that USCIS "will issue a notice of intent to terminate" a regional center if "[a] regional center fails to submit" the required paperwork and pay associated fees *or* if "USCIS determines that the regional center no longer serves the purpose of promoting economic growth."  8 C.F.R. § 204.6(m)(6).  The provision is silent on geographic delineation.  Finally, fears of investor complaints or lawsuits associated with a risky investment

strategy do not automatically conjure standing, particularly where, as discussed in Part I above, Plaintiffs are tied to a geographic area by statute.  *See State Farm Mut. Auto. Ins. V. Dole*, 802 F.3d 474, 480 (D.C. Cir. 1986) ("a party's allegation of hardship will be found wanting if there are too many 'ifs' in the asserted causal chain linking the agency's action to the alleged hardship").  Accordingly, the Court concludes that Plaintiffs' fears of adverse agency action predicated on the 2020 Update are too remote to provide Article III jurisdiction.

Lacking jurisdiction over the case, the Court need not continue to Defendants' final argument, that Plaintiffs' claims fail as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, the Court shall **DENY** Defendants' [22] Motion to Dismiss Based on Changed Circumstances, **GRANT** Defendants' [17] Motion to Dismiss, and **DISMISS** Plaintiffs' [1] Complaint.  An appropriate Order accompanies this Memorandum Opinion.

Dated: March 10, 2022

/s/

COLLEEN KOLLAR-KOTELLY
United States District Judge